## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **MEMORANDUM OF LAW AND ORDER ADOPTING REPORT AND RECOMMENDATION** |
| Plaintiff, | |
| v. | |
| MAURICE LAMAR MYLES, | Crim. No. 22-cr-205 (MJD/TNL) |
| Defendant. | |

Robert M. Lewis, Assistant United States Attorney, for the Government.

Manny K. Atwal, Matthew Deates, Office of the Federal Defender, for Defendant.

## I.    INTRODUCTION

This matter is before the Court on Defendant Maurice Lamar Myles' Objection (Doc. 46) to the March 6, 2023 Report and Recommendation of United States Magistrate Judge Tony N. Leung (Doc. 43). The Report and Recommendation recommends denying Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. 23). The Government has responded to Defendant's Objection to the Report and Recommendation.

1

(Doc. 47.)  For the reasons stated below, the Court will overrule Defendant's

Objection and adopt the Report and Recommendation.

## II.     BACKGROUND

### A.     Procedural Background

On August 23, 2022, an Indictment was filed charging Defendant with

being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and §

924(d)(1).  (Doc. 1.)  Defendant has filed a Motion to Suppress Evidence in which

he seeks to suppress evidence obtained as a result of "the initial seizure of his

person" on April 29, 2022 by law enforcement officers from the Minnesota

Department of Corrections.  (Doc. 46 at 5.)

The Magistrate Judge held a hearing on Defendant's Motion on December

13, 2022.  (Doc. 33.)  At the hearing, the Court received testimony from DOC

Investigator Troy Lennander and exhibits, including Defendant's DOC

Conditions of Release, body-worn-camera footage from four DOC officers, and a

still photo of Defendant.  (Doc. 43 at 2.)  After the hearing, the Magistrate Judge

accepted additional briefing from the parties.  (Doc. Nos. 40, 41.)

### B.     Minnesota's Supervised Release System

Defendant has provided the Court with additional background relevant to his Objection and the Court recounts these additional facts below.

In Minnesota, the DOC sets the conditions of an individual's supervised release.  (Doc. 39, H'rng Tr. at 31.)  The DOC assigns a supervising agent ("SA") to inform the releasee of those conditions and any exceptions thereto.  (Id.)  The SA has authority to determine whether an individual has violated a condition of his supervised release, and whether to issue an administrative arrest warrant based upon a suspected violation.  (Id. at 8–9, 11.)  When an administrative arrest warrant is issued, DOC "fugitive specialist" officers like Lennander are given the task of locating and arresting the individual subject to the warrant.  (Id. at 8, 28.)

### C.     The April 29, 2022 Search and Seizure of Defendant

The following facts are summarized from the Report and Recommendation and the evidence received at the December 13, 2022 hearing on Defendant's Motion to Suppress.

At the time of his arrest on April 29, 2022, Defendant was not the subject of an administrative arrest warrant for violating the conditions of his supervised release.  (Id. at 12, 32.)  In fact, Lennander and his team had not planned to arrest Defendant at all that day.  (Id. at 36.)

3

Instead, Lennander and the other DOC officers initially intended only to arrest Defendant's brother, Dai'quan Husten.  (Id. at 32.)  Husten was also on supervised release.  For several months leading up to April 2022, Lennander had been attempting to locate Husten, who was the subject of an administrative arrest warrant due to an alleged violation of the conditions of his supervised release.  (Id. at 11–12, 14, 29, 32.)  Through his investigation, Lennander learned that Husten was on supervised release for a weapons offense, was a known gang member, and that Defendant was Husten's brother.  (Id. at 12.)

Through his investigation into Husten, Lennander learned that Defendant spent time with Husten, that Defendant was also a known gang member, and that he was also on supervised release for a weapons offense.  (Id. at 12, 30, 51.)  However, Defendant did not review Defendant's actual conditions of supervised release on or before April 29, 2022.  (Id. at 30.)

On April 29, 2022, Lennander and a group of other officers went to an apartment building in Oakdale, Minnesota to look for Husten to arrest him on his DOC warrant.  (Id. at 10–11, 32.)  During their investigation, Lennander observed Husten and Defendant walking together.  (Id. at 13, 32–33, 36, 45–46.)  At some point after observing the two together, the officers decided to detain

Defendant because they suspected that he was violating a condition of his supervised release by associating with another known gang member, i.e., Husten. (Id. at 16.)

Lennander testified that his plan was to contact Defendant's SA after detaining him to see if the SA wanted to find Defendant in violation of his supervised release for associating with Husten. (Id. at 14–15, 34, 47.) For officer safety reasons, they also planned to handcuff and frisk Defendant for weapons after detaining him given that he would be in the immediate area while the officers were executing the arrest warrant on Husten. (Id. at 26, 48.)

As Husten and Defendant approached an apartment building in Oakdale, Lennander and his team jumped out of unmarked police vehicles and quickly approached the two brothers on foot. (Id. at 17, 39–40.) The officers pointed their firearms at Husten and Defendant and started yelling commands at them. (Id. at 40; accord Gov't Ex. 2, Lennander body-worn-camera footage, at 00:19-00:38.) Husten cooperated with the commands, but Defendant began walking toward the apartment building door. (Doc. 39 at 17–18.) The officers yelled at Defendant to come back and Defendant complied. (Id. at 18.) An officer then

grabbed Defendant's arms and put them behind his back.  (Id. at 41–42; accord Gov't Ex. 2, Lennander body-word-camera footage, at 00:32–01:03.)

As Lennander approached Defendant from the front he "observed a very heavy object that [he] believed to be a firearm in the front hoodie pocket that [Defendant] was wearing."  (Doc. 39 at 18–19; see also Gov't Ex. 3 (still photograph from body-word-camera footage depicting heavy object in Defendant's sweatshirt pocket).)  Lennander grabbed the front of Defendant's sweatshirt and gripped the object from the outside.  (Doc. 39 at 19.)  Lennander testified that he "immediately recognized" the object as a firearm when he grabbed it.  (Id. at 19–20, 49.)  He notified his team that he had located a firearm by yelling "[w]e got a gun . . . gun, gun, gun!"  (Gov't Ex. 2, Lennander body-worn-camera footage, 00:39–00:44.)

Lennander testified that his plan to detain Defendant changed when he located the firearm, and he decided to arrest Defendant for a weapons offense instead.  (Doc. 39 at 25–26.)  Lennander testified that he knew Defendant was a felon on supervised release and was ineligible to possess a firearm.  (Id. at 26, 50–51.)

Lennander contacted Defendant's SA shortly after arresting Defendant. (Id. at 31–32, 43–44.)  Lennander's assumption turned out to be correct: Defendant's Conditions of Release prohibited contact with other gang members without prior approval.  (Id. at 16–17; see also Gov't Ex. 1, Conditions of Release.)

## III.    DISCUSSION

Defendant filed a motion challenging the initial seizure of his person on April 29, 2022 as a violation of the Fourth Amendment.  (Doc. 23.)  Defendant now objects to the Magistrate Judge's recommendation that his Motion be denied.  Where, as here, a party files a proper objection to a magistrate judge's report and recommendation, this Court conducts a de novo review of the record. D. Minn. LR 72.2(b)(3).

### A.    Fourth Amendment Standard Applicable to Individuals on Supervised Release

Although the Government asserted multiple bases for the seizure at issue in its briefing before the Magistrate Judge, the Report and Recommendation focuses on the probationary search exception to the Fourth Amendment's warrant requirement.  (See Doc. 43 at 14 n.4.)

Courts may impose reasonable conditions on individuals on supervised release, including by requiring them to submit to warrantless searches and seizures.  United States v. Knights, 534 U.S. 112, 119–20 (2001).  Imposing such a condition does not entirely eliminate an individual's reasonable expectation of privacy under the Fourth Amendment, but it does diminish it "significantly."  United States v. Kuhnel, 25 F.4th 559, 564 (8th Cir. 2022) (quoting Knights, 534 U.S. at 118–19).  "[W]hen a probationer is subject to a probationary search condition, the Fourth Amendment permits an officer to search pursuant to that [probationary] condition without a warrant based only upon that officer's reasonable suspicion that the probationer is violating his probation's terms."  United States v. Becker, 534 F.3d 952, 956 (8th Cir. 2008) (quoting United States v. Brown, 346 F.3d 808, 811 (8th Cir. 2003)); see also United States v. Hamilton, 591 F.3d 1017, 1022 (8th Cir. 2010); United States v. Graber, No. 8:18-cr-304, 2019 WL 2448561, at *2 (D. Neb. May 22, 2019) ("Although these prior cases primarily address the validity of warrantless searches pursuant to a condition of probation, the same reasoning applies to the seizure of Defendant's person pursuant to a similar condition of supervision.").  For present purposes, the Court cites the case law's use of terms such as "probation," "parole," and "supervised release"

8

interchangeably.  See United States v. Makeeff, 820 F.3d 995, 1001 (8th Cir. 2016)

(quoting Samson v. California, 547 U.S. 843, 850 (2006) ("Supervised release,

parole, and probation lie on a continuum.").

      Under the terms and conditions of Defendant's supervised release in effect

at the time of his arrest, Defendant agreed to "submit to any unannounced . . .

searches by the agent/designee of [Defendant]'s person."  (Gov't Ex. 1,

Conditions of Release.)  Therefore, the warrantless search and seizure of

Defendant was reasonable if supported by a "reasonable suspicion" that he was

violating the terms of his supervised release.  Hamilton, 591 F.3d at 1022.

"Reasonable suspicion exists when, considering the totality of the circumstances

known to the officer at the time, the officer has a particularized and objective

basis for suspecting wrongdoing."  Id. (citing United States v. Henry, 429 F.3d

603, 609-10 (6th Cir. 2005)); see also Becker, 534 F.3d at 956 ("reasonable

suspicion that the probationer has violated the terms of his probation is sufficient

to justify a search").

    **B.**    **The Officers had a Sufficient Basis to Seize Defendant to Investigate a Suspected Supervised Release Violation**

      During his investigation into Husten, Lennander learned that Defendant

was also a known gang member and was on supervised release for a felony

weapons offense.  (Doc. 39 at 12, 30, 51–52.)  Lennander admittedly did not

review Defendant's Conditions of Release or contact his SA to learn what

Defendant's specific conditions of release were prior to seizing him on April 29,

2022.  And Defendant also did not have any active warrants for his arrest when

Lennander and his team seized him.

But Lennander has over six years of experience with the DOC and his

primary duties include investigating and arresting offenders for violating the

terms of their supervised release.  (Id. at 7–9, 28.)  Lennander testified that he

knows from his experience that there are standard terms of supervised release

for individuals convicted of violent offenses or with gang activity in their past,

like Defendant.  (Id. at 46–47.)  The Magistrate Judge determined that Lennander

testified credibly that he knows these standard conditions typically include

restrictions on associations with other gang members.  (Doc. 43 at 12.)

Lennander also testified that he believed Defendant to be in violation of

this standard condition when he observed him associating with Husten on April

29, 2022.  (Doc. 39 at 13, 16, 32–33, 36, 45–46.)

Defendant argues that the officers could not have had a "reasonable

suspicion" that he was violating the conditions of his supervised release when

they seized him for multiple reasons. Defendant points out that the officers merely observed him walking with his brother, that they had not reviewed his supervised release conditions or talked with his SA about his conditions, and that SAs often make exceptions to gang-contact conditions to allow individuals to associate with family members. Based on these facts, Defendant argues that the officers impermissibly relied on the absence of facts or a mere "inchoate hunch" when they seized him. See United States v. Merrett, 8 F.4th 743, 750 (8th Cir. 2021) (citations omitted); United States v. McLemore, 887 F.3d 861, 866–67 (8th Cir. 2018).

However, the Court finds the facts described above, when taken together, established a sufficiently "particularized and objective basis" for Lennander and his team to have reasonably suspected Defendant to be in violation of the conditions of his supervised release when they observed him with Husten on April 29, 2022. Hamilton, 591 F.3d at 1022. Further, as to the search of Defendant's person, the outline of the firearm was obvious upon looking at Defendant's sweatshirt pocket from a short distance. (See Gov't Exs. 2–3.) Thus, in addition to Defendant's supervised release status, the officers were also justified in searching Defendant based on officer safety concerns. United States

11

v. Horton, 611 F.3d 936, 940–41 (8th Cir. 2010) ("Once a suspect is legally stopped, an officer who has reason to believe the detained individual may be armed and dangerous may conduct a pat-down search for weapons to ensure officer safety.") (internal quotations omitted).

Accordingly, the officers did not violate Defendant's Fourth Amendment rights by seizing him and then conducting a search of his person. The Court will overrule Defendant's Objection to the Report and Recommendation.

## ORDER

Based on the foregoing reasons, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendant's Objection is **OVERRULED** and the March 6, 2023 Report and Recommendation (Doc. 43) is **ADOPTED**;

2.    Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. 23) is **DENIED**.


Dated:  May 16, 2023                         s/Michael J. Davis
                                             Michael J. Davis
                                             United States District Court